## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PERRY BOGGS, KEVIN TARRANT, and
DONALD LANCASTER,

          Plaintiffs,

    v.

AAI CORPORATION and AAI SERVICES
CORPORATION,

          Defendants.

Civil Action No. 1:13-cv-00835-ELH

## PLAINTIFFS' UNCONTESTED MOTION FOR APPROVAL OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION COSTS

This Fair Labor Standards Act ("FLSA") collective action matter was settled on June 19, 2013. Pursuant to the parties' Stipulation and Proposed Settlement Agreement [Doc. 23], counsel for the Plaintiffs hereby file their motion seeking the Court's final approval of their fees and litigation costs incurred in this matter and the settlement of this matter.

The amount of attorney's fees and litigation costs has already been approved: (i) by the Plaintiffs, (ii) by the Defendants and their counsel, and (iii) preliminarily by the Court in its Order Granting Preliminary Approval of FLSA Collective Action Settlement [Doc. 25]. Accordingly, the parties hereby seek final Court approval of the undersigned's attorney's fees and reimbursement of litigation costs as part of the settlement of this FLSA Collective Action.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The named and putative Plaintiffs in this case are represented by the law firm of Rubin, Fortunato & Harbison P.C. (the "Rubin Fortunato firm").[1]    The Rubin Fortunato firm's investigation of this matter commenced over one year ago in November 2012 on behalf of a single individual employed by the Defendants.    As the investigation progressed, it was determined that a potential class/collective action, instead of a single plaintiff case, would be warranted.    As such, additional class representatives were located in December 2012.    The proposed class/collective action anticipated a nationwide class of employees of the Defendants.

In March 2013, the Rubin Fortunato firm filed a FLSA Collective Action Complaint in this Court (the "Boggs" Case) [Doc. 1].[2]    At that time, there were three named Plaintiffs – two of which who resided in Arizona and the third who resided in California.    Each of the three named Plaintiffs traveled to various states for their work with Defendants (though Defendants are headquartered in Maryland).    As each named Plaintiff retained the Rubin Fortunato firm to be counsel in this matter, he executed a Contingency Fee Agreement/Letter of Representation (the "Contingency Fee Agreement") with the Rubin Fortunato firm.    In the Contingency Fee Agreements, each Plaintiff agreed to a standard contingency fee relationship which, in general,

---

[1]    The Affidavit of Lead Counsel for Plaintiffs, Peter R. Rosenzweig, in Support of Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs, attached hereto as Exhibit "A," is provided in support of this uncontested request for final approval of fees and costs.

[2]    The Boggs Case alleged that Defendants failed to pay certain overtime compensation to "similarly situated" current and former Field Service Engineers ("FSEs") assigned to support Defendants' Extended Range Multi-Purpose ("ERMP" or "ER/MP") Program (so-called "ERMP FSEs"). On May 13, 2013, approximately two months after the filing of the Boggs Case, the Rubin Fortunato firm filed a related case against Defendants in this Court.    That case, *Trembly, et al. v. AAI Services Corp., et al.*, Case No. 1:13-cv-01393-ELH (the "Trembly" Case), alleged that Defendants failed to pay certain overtime compensation to "similarly situated" current and former Flight Crew members ("Pilots") also assigned to support Defendants' ERMP Program (so-called "ERMP Pilots"). The instant case and the Trembly Case are referred to herein together as the "ERMP Cases" and, for all intents and purposes, were essentially litigated and settled together.

provided that; only in the event of a monetary recovery through a settlement or court award, the Rubin Fortunato firm would be entitled to reimbursement of litigation costs and a contingency fee of 33.3%.

Certainly, the geographic scope of the parties and the potential nationwide breadth of the class posed challenges for the Rubin Fortunato firm. The Plaintiffs' position in the case was that their job duties and responsibilities are routine and primarily mechanical in nature, and that they perform most of their work outside in the field. By contrast, the Defendants indicated that the job requires the Plaintiffs to perform a substantial amount of non-manual, administrative work, and that their primary role is to maintain the Ground Control Station associated with the General Atomics Gray Eagle Unmanned Aircraft Vehicle, which requires that they perform significant computer programming-related tasks. In addition, Defendants contended that the Plaintiffs serve as Defendants' "face" to its customers—both the Army and General Atomics—and that they often exercise independent judgment and discretion in evaluating weather conditions and troubleshooting technical problems as they arise. Moreover, while the Plaintiffs alleged that they and the other putative class members are "similarly situated" within the meaning of the FLSA, Defendants indicated their belief that the duties and responsibilities of the Plaintiffs and potential class members vary depending on the particular location to which they are assigned. Needless to say, it was apparent that a case involving disputed factual and legal issues was in store, with Plaintiffs living and working throughout the United States.

In May 2013, following service of the FLSA Collective Action Complaint and the initial dialogue between the Rubin Fortunato firm and counsel for Defendants, the case was referred to United States Magistrate Judge Stephanie A. Gallagher for a settlement conference, which was scheduled for June 19, 2013. It was ordered that in the event a settlement was not reached,

Defendants were to file their Answer to Plaintiffs' Complaint within 21 days after the conclusion of settlement discussions. Counsel for the parties agreed to participate in targeted discovery for the purpose of preparing for the settlement conference with Magistrate Judge Gallagher.

Subsequently, on behalf of the Named Plaintiffs, the Rubin Fortunato firm filed a motion seeking to amend the initial FLSA Collective Action Complaint to add Rule 23 class action allegations under Maryland and California state law [Doc. 15]. The parties agreed to stay Defendants' response to Plaintiffs' Motion for Leave to Amend while they engaged in their settlement discussions and the previously-scheduled settlement conference before Magistrate Judge Gallagher. The Court agreed and Defendants were ordered to file their Opposition to Plaintiffs' Motion for Leave to Amend by not later than July 12, 2013, in the event a settlement was not reached.

Ultimately, upon completion of the discovery (which included the exchange/review of one thousand pages of relevant documents and numerous client and witness interviews) and after a full-day conference with Magistrate Judge Gallagher on June 19, 2013, the parties were successful in reaching a class-wide settlement for the total sum of $230,000.[3] The parties agreed that the settlement fund of $230,000 would be allocated amongst the Plaintiffs and the Rubin Fortunato firm for reimbursement of its litigation costs and its fees. More specifically for purposes of this Motion and as described in greater detail below, pursuant to the Contingency Fee Agreements with the Plaintiffs, the Rubin Fortunato firm is entitled to 33.3% of the settlement after reimbursement of the litigation costs. As the parties agreed during the settlement conference with Magistrate Judge Gallagher, the Rubin Fortunato firm will not seek any fees

---

[3]     The June 19, 2013 settlement conference with Magistrate Judge Gallagher encompassed both of the ERMP Cases. The total settlement for the ERMP Cases was $560,000. The parties agreed to a class-wide settlement of the Boggs Case for $230,000 and a class-wide settlement of the Trembly Case for $330,000.

4

over and above the $230,000 and will only be paid from the settlement fund. Nor is the Rubin Fortunato firm seeking any enhancements to its fee. The Defendants have already consented to a maximum fee of $76,590 (out of the $230,000) to the Rubin Fortunato firm.

Immediately after reaching the settlement with Magistrate Judge Gallagher, the parties spent countless hours together negotiating and preparing a collective action settlement agreement, a joint motion for approval of the FLSA settlement, a proposed order granting approval of the FLSA collective action settlement, and notice and claims forms to be sent to the class members advising of their eligibility to opt-in to the settlement. On August 12, 2013, these documents were filed with the Court [Doc. 24]. These documents contain detailed language exactly in line with the explanation above – that the Rubin Fortunato firm would seek as fees 33.3% of the settlement fund and that the Defendants would consent to that request and that amount. This calculus is reasonable as the Defendants have certainty as to the maximum amount of their monetary exposure, and the Rubin Fortunato firm and the class divide the available settlement fund based on their Contingency Fee Agreement. The Court has already preliminarily approved these terms in the Order Granting Preliminary Approval of FLSA Collective Action Settlement [Doc. 25].

Accordingly, as part of the agreed-upon settlement and settlement procedure, the Rubin Fortunato firm now seeks the Court's final approval of its fees and reimbursement of litigation costs pursuant to Contingency Fee Agreements with the Plaintiffs.

## II.    STANDARD OF REVIEW FOR SETTLEMENTS AND APPROVAL OF ATTORNEY'S FEES PURSUANT TO THE FLSA

The standard of review for purposes of approval of the parties' settlement agreement in a FLSA case is less stringent than the review of a fee petition.  As Judge Quarles of this Court observed:

> There is a 'strong presumption in favor of finding a settlement fair.'  Because a settlement hearing is not a trial, the court's role is more 'balancing of likelihoods rather than an actual determination of the facts and law in passing upon . . . the proposed settlement.'

*Hoffman v. First Student, Inc.*, No. 06-1882, 2010 U.S. Dist. LEXIS 27329 (D. Md. March 23, 2010) (citing *Lomascolo v. Parsons Brinkerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27, 28 (E.D. Va. June 23, 2009)); *accord Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) ("'strong presumption' exists in favor of approval of settlement, and the bona fide dispute inquiry "must not be turned into a trial or a rehearsal of the trial.").

In awarding attorney's fees under the FLSA,[4] the Court should begin by determining the lodestar; "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." *Lopez v. Lawns 'R' Us*, 07-2979, 2008 U.S. Dist. LEXIS 112120, at *14-15 (D. Md. May 23, 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  The number of hours it was reasonable to devote to the case, and the reasonable hourly rates charged by personnel working on the case, are to be determined through consideration of the twelve Johnson factors, derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and endorsed in *Hensley*, 461 U.S. at 430 n.3 and *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir.

---

[4]      As explained below, this is not a post-judgment fee petition in which the lodestar analysis would be applied.  Rather, the fee in the instant matter is the agreed-upon contingency fee available as a result of the successful settlement of this case.  Still, however, the contingency fee sought here by the Rubin Fortunato firm would satisfy the lodestar analysis as it is very fair and reasonable under the circumstances, and proportionate to the settlement fund amount and the monies available to all of the Plaintiffs.

1986). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*; *see Johnson*, 488 F.2d at 717-19. Additional circumstances may be taken into account which render the product of reasonable hours times reasonable rates an unduly high or low award of attorney's fees, such as the achievement of "exceptional success," which may justify an upward adjustment of the fee award. *Lopez*, 2008 U.S. Dist. LEXIS 112120, at *16 (*citing Blum v. Stenson*, 465 U.S. 886 (1984)); *Hensley*, 461 U.S. at 435.

In this case, the hours expended by Plaintiffs' counsel are reasonable, their rates are reasonable, and the final fee for which they seek approval of is reasonable. It is reasonable for Plaintiffs' counsel to seek one-third of the total settlement they procured with two-thirds going to the Plaintiffs.

III. **THE DIVISION OF THE SETTLEMENT AMOUNT AMONG PLAINTIFFS AND BETWEEN PLAINTIFFS AND COUNSEL, AND THE TERMS OF PAYMENT, ARE FAIR AND REASONABLE**

As explained above, at the beginning of this case the Rubin Fortunato firm entered into Contingency Fee Agreements with each of the named Plaintiffs. These Contingency Fee Agreements specifically addressed the topics of attorney's fees and litigation costs with the

following express language – language commonly found in standard contingency fee agreements:

---

*Fees for Legal Services – Contingency Fee Arrangement*

In consideration of the Firm's professional services rendered in the Litigation, you agree to pay a fee equal to thirty-three and one-third percent (33.3%) of the total gross sum recovered by way of settlement, court judgment or agency award, including any settlement or award of attorneys' fees. The percentage is calculated on the total amount of any settlement or court judgment obtained less costs and disbursements and is based on pre-tax dollars.

In the event of a settlement or award of attorneys' fees, you agree that the Firm's fee will be the greater of: (1) the settlement or award of attorneys' fees; or (2) the 33.3% fee identified in the prior paragraph.

In the event there is no recovery in the Litigation, you will not be obligated to pay any fee for the Firm's services.

*Costs and Disbursements*

The Firm shall advance all out-of-pocket costs and disbursements in the Litigation. You are not directly responsible to pay any of the costs and disbursements of the Litigation. The Firm's recovery of costs and disbursements is contingent upon a recovery being obtained. If no recovery is obtained, you will owe nothing for fees, costs and disbursements.

Please note that the Firm reserves the right to recover fees for services and any outstanding balances for expenses from the settlement proceeds or other recovery, if any, in connection with the Litigation. As a result, you agree that any settlement check or payment will be made payable to the Firm. The Firm will then send you the balance of the settlement or other proceeds after appropriate adjustments for any outstanding fees and costs. Similarly, you agree that in the event of a settlement payable in installments, the Firm shall be entitled to reimbursement for all outstanding fees and costs from the first funds received.

---

Each of the named Plaintiffs executed the Contingency Fee Agreements with this exact language and agreed to these terms. Each of the named Plaintiffs now consents to the Rubin Fortunato firm's recovery of attorney's fees and litigation costs as per these terms. And, further,

the Defendants consent to the Rubin Fortunato firm's recovery of attorney's fees and litigation costs as per these terms.

Moreover, the final 33.3% fee sought to be approved here is extremely fair and reasonable as it is equitably proportionate in light of the total settlement amount and the amount of settlement monies that were made available to the named Plaintiffs and the class members. Specifically, as of the date of this Motion, for this federal court collective action case, the Rubin Fortunato firm has incurred $830.50 in litigation costs.[5] Deduction of that $830.50 from the $230,000 for the reimbursement of litigation costs leaves $229,169.50. 33.3% of $229,169.50 equals $76,313.44 – which is the total fee the Rubin Fortunato firm now seeks approval of. This $76,313.44, however, does not all go to the Rubin Fortunato firm. Because the Rubin Fortunato firm is a Pennsylvania firm, it was required to retain a local counsel in Maryland for this case. As such, the Rubin Fortunato firm has a separate agreement with its local counsel firm whereby it must compensate it for its work in this case. It has been agreed that the Rubin Fortunato firm will pay its Maryland local counsel out of the contingency fee payment it receives. In total, approximately $7,631.34 must be taken from the $76,313.44 to pay the Maryland local counsel firm for the work it performed. That leaves an approximate net fee of $68,682.10 for the Rubin Fortunato firm.

Accordingly, in line with a standard contingency fee relationship, here the clients are receiving approximately two-thirds of the settlement fund and the law firms together are receiving approximately one-third of the settlement fund. There are 47 eligible members of the Plaintiff class in this matter. To date, 33 members of the class (70.21%) have opted to

---

[5]     The parties acknowledge and understand that these numbers may change slightly in between the filing of this Motion and the final completion of this case (including the final hearing scheduled for December 20, 2013).

participate in the settlement.[6]   These 33 participating Plaintiffs will share this approximate $152,856.06 which has been made available to them through the settlement obtained by the Rubin Fortunato firm. *See Hoffman*, 2010 U.S. Dist. LEXIS 27329, at \*11 (Under the FLSA and the terms of the lead class members' Agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award.  Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, the fees and costs requested are reasonable and appropriate.).

## IV.   THE FEES SOUGHT TO BE APPROVED ARE REASONABLE AND PROPORTIONATE TO THE SETTLEMENT

As set forth above, the Rubin Fortunato firm and its Maryland local counsel firm are entitled to $76,313.44 in fees pursuant to the Contingency Fee Agreements.  Such an amount is reasonable given the circumstances of this case and the size of the settlement, and should be finally approved by the Court.  The fee to the Rubin Fortunato firm is not the product of an hourly fee award, but rather, is the product of a contingency fee arrangement articulated in each Plaintiff's Contingency Fee Agreement.  Ultimately, in any contingency fee arrangement, the lawyer accepts the risk of expending far more time in comparison to the contingency fee received.  Conversely, in such arrangements, there are instances in which the total amount of lawyer hours expended is small in comparison with the monetary result.  The present case, however, falls into neither of those extremes as the contingency fee sought to be approved here fits into the contemplated two-thirds/one-third division and also happens to be very close to what the fees total would have been had they been calculated on an hourly basis.

---

[6]      In the related Trembly Case, there are 67 eligible members of the Plaintiff class.  In the Trembly Case, 32 members of that class opted to participate in the settlement of that case.  Thus, for both of the ERMP Cases, out of a total of 114 eligible Plaintiffs, 65 (57%) opted to participate in the settlements.

Though the common lodestar analysis is not technically required here as this is not a post-judgment petition seeking the award of fees over and above the judgment amount, application of the lodestar factors, does in fact, confirm that the fee for which the Rubin Fortunato firm seeks approval is fair and reasonable, especially insofar as it is proportionate to the size of the entire settlement fund and the amount of money to be paid to the settlement opt-in members.

To this end, typically, the twelve factors listed above comprise the appropriate standard in assessing the reasonableness of the hours and rates claimed. The 12-factor lodestar analysis is as follows:

1.      The time and labor required.

There was significant time and labor expended to investigate, commence, litigate, and settle this case. As lead counsel, the Rubin Fortunato firm has had two partners and one associate assigned to the case for the duration. Additionally, the case required time and resources from a local counsel firm in Baltimore, MD (where the case was brought). Between the Rubin Fortunato firm and its local counsel, almost 250 hours have been expended on this engagement as of the filing of this request for approval and more will be required to monitor and finalize the settlement of this case.[7]  Between this case and the Trembly Case (which as explained above were essentially litigated and settled together), almost 550 hours total will have been expended by the Rubin Fortunato firm and its local counsel for and on behalf of the Plaintiffs.

---

[7]      The time records/billing sheets of the Rubin Fortunato firm and the local counsel firm consist of almost one hundred pages. Should the Court desire to review them, they can be produced. The undersigned attests to the amount of hours expended the Rubin Fortunato firm and the local counsel firm on behalf of the Plaintiffs. *See* Exhibit "A."

2.    The novelty and difficulty of the questions.

In essence, the primary issue in this case was whether the Plaintiffs (the "ERMP Field Service Engineers") were misclassified as "exempt" under the FLSA.[8]   In this case, there were numerous novel and difficult questions of both fact and law that affected the initial strategy and ultimately the discussions of settlement.   These difficult issues included, but were not limited to: (a) despite the "exemption classification" issue (i) the fact that Defendants had made voluntary back-pay awards to certain ERMP FSEs for the 2012 calendar year and the effect of same, and (ii) the fact that Defendants voluntarily modified their overtime compensation policies for the ERMP FSEs beginning on January 1, 2013 and the effect of same; and (b) the fact that the ERMP FSEs were classified by Defendants as "100%" travel meaning that they worked in various states (with varying wage and hour laws) throughout the calendar year.

3.    The level of skill required to perform the legal service properly.

The Rubin Fortunato firm attorneys possessed the skills and applicable knowledge necessary to handle this case properly from inception through settlement.   Lead counsel for the Plaintiffs, Peter Rosenzweig, is a 1994 *cum laude* graduate from the Schreyer Honors College at the Pennsylvania State University (graduated with Distinction and with Honors in Labor and Industrial Relations) and a 1997 *cum laude* graduate from the University of Miami School of Law.   He has more than sixteen years legal experience practicing exclusively in the area of labor and employment law in state and federal courts around the country.   He has handled numerous FLSA cases and wage/hour issues for both employees and employers.   He heads the Individual Representation practice for the firm's Employment Practices Group.

---

[8]       The specific issues in this case and bona fide disputes are detailed in the parties' Joint Motion for Order Certifying Plaintiff Class and Preliminarily Approving Stipulation and Settlement Agreement, Notice, and Claim Form [Doc. 24].

His partner and co-counsel, Michael Fortunato, is the Chair of the firm's Employment Practices Group. For over twenty years, he has represented clients in numerous trials and arbitrations involving virtually every aspect of the employment relationship. Mr. Fortunato has been recognized by other lawyers as one of Pennsylvania's top employment litigation lawyers since 2008. He received his undergraduate (1987) and law (1990) degrees from The Catholic University of America, where he served as an editor on the law review.

Messrs. Rosenzweig and Fortunato are frequent speakers/CLE presenters and, thus, are customarily updated on the FLSA and any developments in its application, and wage/hour laws in general.

Lauren Fuiman Cell, the associate in the Employment Practices Group at the Rubin Fortunato firm who worked on this case, is a *summa cum laude* graduate from Saint Joseph's University in Philadelphia (2006) and a *summa cum laude* graduate from the Earle Mack School of Law at Drexel University (2009). Before joining the firm, Ms. Cell served as a Judicial Clerk to the Honorable Timothy R. Rice, Magistrate Judge, United States District Court for the Eastern District of Pennsylvania as well as the Honorable Louis R. Meloni of the New Jersey Superior Court, Civil Division, Camden County. Ms. Cell's practice is dedicated solely to labor and employment law matters.

4.     The opportunity costs.

There is a drastic opportunity cost in taking on the representation of a class action case with hundreds of putative class members dispersed throughout the country. It is a massive undertaking with a significant drain on people power and firm resources. The commitment to take on such a matter is made knowing that other opportunities will necessarily have to be declined, and so was the case here.

The Rubin Fortunato firm has only 41 attorneys, the vast majority of whom spend their time exclusively on matters for the firm's existing clients.   There were various cases and representations that the Rubin Fortunato firm could not accept as a result of having so many people and resources dedicated to this case (and the related Trembly Case).

   5. The customary fee.

The contingency fee customarily utilized by the Rubin Fortunato firm in its contingency fee matters is 33.3% – the same as in the present matter.  The hourly fees customarily charged by the Rubin Fortunato firm to fee paying clients are:

> Michael Fortunato: $485.00
>
> Peter Rosenzweig: $400.00
>
> Lauren Fuiman Cell: $170.00

The fee for which the Rubin Fortunato firm now seeks approval is based on the same percentage that the firm would be entitled to in any of its other contingency fee matters. Furthermore, it is similarly close to what the total fee would have been had the Rubin Fortunato firm undertaken this representation on an hourly fee basis (300 hours at an average hourly rate of $300.00 totals $90,000.[9]  Importantly, the rates of the Rubin Fortunato firm attorneys as listed above fall squarely within the accepted rates identified in Appendix B of the Local Rules of this Court.

   6. The attorney's expectations at the outset of the litigation.

As stated throughout this Motion, the Rubin Fortunato firm accepted and handled this case on a contingency fee basis. The Rubin Fortunato firm bore a substantial risk of developing and carrying this case through a federal court trial, especially against very sophisticated

---

[9] Combining the likely final total of hours expended in the ERMP Cases (550 total hours at the average hourly rate of $300.00) generates a total hourly fee of $165,000).

Defendants and their counsel who are extremely well-known, experienced, and advanced in the area of FLSA litigation.

      7.     <u>The time limitations imposed by the client or the circumstances.</u>

Albeit not a time limitation, a unique limitation in this case did exist which presented additional hurdles for the Rubin Fortunato firm. Specifically, due to the nature of their job, the Plaintiffs would travel to and spend extended periods of time (sometimes up to one year) abroad working in Afghanistan, creating obvious distance and time-difference issues. This made meeting with and simply communicating with the Plaintiffs far more difficult and at times caused delays at crucial points during the litigation. Notwithstanding this unique obstacle, the Rubin Fortunato firm was able to sufficiently communicate with the Plaintiffs to gather the necessary information and perform/provide the discovery required to bring this case to a successful resolution.

      8.     <u>The amount involved and the results obtained.</u>

As set forth above, it was at all times impossible to articulate the exact amount of money at stake as any estimation would presume to know the conclusions of a future finder of fact. In consideration of such risk and uncertainty, Plaintiffs resolved this case and enjoyed significant success, agreeing to an available settlement fund of close to a quarter of a million dollars for the class and a settlement payment formula that could pay each settlement opt-in member a sum close to his/her overtime wages for the prior three year period (and in some instances, the prior four year period). The extremely high settlement participation rate of 70.21% indicates the Plaintiffs' satisfaction with the results obtained through this case and the settlement.

9. <u>The experience, reputation, and ability of the attorneys</u>.

The experience of Plaintiffs' attorneys is set forth in detail above and fully justifies the reasonable contingency fee payment sought to be approved. Plaintiffs' attorneys are highly skilled, experienced, and well-known practitioners in the area of employment law, especially in connection with wage/hour issues.

10. <u>The undesirability of the case</u>.

Many attorneys, even those who specialize in employment law, would decline representation in a FLSA collective action matter on a strict contingency fee basis with hundreds of potential plaintiffs dispersed throughout the United States; many of whom could be overseas at any given time making the routine logistics of case investigation and discovery far more difficult. Nonetheless, the Rubin Fortunato firm agreed to represent the Plaintiffs, navigated these cumbersome geographic and other issues, complex and novel substantive issues under the FLSA, and pursued Plaintiffs' claims to a successful settlement.

11. <u>The nature and length of the professional relationship with the client</u>.

The Rubin Fortunato firm has represented the Plaintiffs from the outset of the case. These relationships between the Rubin Fortunato firm and the Plaintiffs span as far back as more than one year. The attorneys at the Rubin Fortunato firm worked extremely close with the Plaintiffs to explore their employment relationship with the Defendants and analyze all wage and hour issues under the FLSA and the many applicable state wage and hour laws.

12. <u>Awards in similar cases</u>.

Each case that the Rubin Fortunato firm handles for a plaintiff client on a contingency fee basis requires a fee agreement providing a fee of 33.3% of any monetary recovery by way of a settlement or court award. This is the standard. In accord with that, the 33.3% of this settlement

is fair and appropriate, and is exactly similar to the Rubin Fortunato firm's fee in other settled contingency fee cases.

## V.    CONCLUSION

The Plaintiffs here sought out the Rubin Fortunato firm and retained it to represent them in a case against the Defendants for alleged unpaid overtime compensation. The Plaintiffs requested that the representation be on a contingency fee basis and the Rubin Fortunato firm agreed to that arrangement. At the outset, the Plaintiffs and the Rubin Fortunato firm agreed that in the event of a monetary recovery either through a settlement or a court award, the Rubin Fortunato firm would be entitled to reimbursement of its litigation costs and a contingency fee equal to 33.3%.

The Rubin Fortunato firm took the massive risk of litigating this collective action matter with the possibility of no recovery. After a year of work and significant devotion of labor and resources, the Rubin Fortunato firm was able to secure a robust settlement for the Plaintiffs – evidenced by the very high settlement opt-in rate. Accordingly, the Rubin Fortunato firm in return only asks for the compensation the parties agreed it would be paid in this event, *i.e.*, 33.3% of $229,169.50, or $76,313.44. The fee sought by the Rubin Fortunato firm is reasonable. The fee sought by the Rubin Fortunato firm is proportionate to the amount of work done on the case and to the total amount paid out to the settlement class members.

With the consent of the Defendants, the Rubin Fortunato firm respectfully requests that the Court approve the reimbursement of its litigation costs and its contingency fee of $76,313.44.

Respectfully submitted,

RUBIN, FORTUNATO & HARBISON P.C.

Dated:   December 6, 2013

Peter R. Rosenzweig, Esq. *(pro hac vice)*
Michael J. Fortunato (*pro hac vice*)
Lauren Fuiman Cell (*pro hac vice*)
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, PA 19301
Ph.  (610) 408-2004

Jeffrey R. Bloom
(Bar No. 18013)
5858 Hubbard Drive
Rockville, MD 20852
Dir. Tel: (443) 691-7930
Ofc. Tel: (202) 265-7755
Facsimile: (240) 235-4418

*Attorneys for Plaintiffs*

# EXHIBIT "A"

**RUBIN, FORTUNATO & HARBISON P.C.**
**10 SOUTH LEOPARD ROAD**
**PAOLI, PA 19301**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PERRY BOGGS, KEVIN TARRANT, and
DONALD LANCASTER,

                  Plaintiffs,

       v.

AAI CORPORATION and AAI SERVICES
CORPORATION,

                  Defendants.

Civil Action No. 1:13-cv-00835-ELH

---

## AFFIDAVIT OF LEAD COUNSEL FOR PLAINTIFFS, PETER R. ROSENZWEIG, IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR APPROVAL OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION COSTS

I, Peter R. Rosenzweig, being duly sworn, state as follows:

1.     I am the lead attorney for the Plaintiffs in the above-captioned action and I am familiar with the file, record, pleadings, time records, and billings in this case.

2.     On behalf of my firm – Rubin, Fortunato & Harbison P.C. – I have been lead counsel for the Plaintiffs in this FLSA collective action case since November 2012.

3.     I am a shareholder at the Rubin Fortunato firm. I am a 1994 *cum laude* graduate from the Schreyer Honors College at the Pennsylvania State University (graduated with Distinction and with Honors in Labor and Industrial Relations) and a 1997 *cum laude* graduate from the University of Miami School of Law. I have over sixteen years legal experience practicing exclusively in the area of labor and employment law in state and federal courts around the country. I've handled numerous FLSA cases and wage/hour issues for both employees and

employers. I am the head of the Individual Representation practice for the firm's Employment Practices Group.

4.     My partner and co-counsel in this case, Michael Fortunato, is the Chair of the firm's Employment Practices Group. For over twenty years, he has represented clients in numerous trials and arbitrations involving virtually every aspect of the employment relationship. Mr. Fortunato has been recognized by other lawyers as one of Pennsylvania's top employment litigation lawyers since 2008. He received his undergraduate (1987) and law (1990) degrees from The Catholic University of America, where he served as an editor on the law review.

5.     Both I and Mr. Fortunato are frequent speakers/CLE presenters and, thus, are customarily updated on the FLSA and any developments in its application, and wage/hour laws in general.

6.     Lauren Fuiman Cell, the associate in the Employment Practices Group at the Rubin Fortunato firm who worked on this case, is a *summa cum laude* graduate from Saint Joseph's University in Philadelphia (2006) and a *summa cum laude* graduate from the Earle Mack School of Law at Drexel University (2009). Before joining the firm, Ms. Cell served as a Judicial Clerk to the Honorable Timothy R. Rice, Magistrate Judge, United States District Court for the Eastern District of Pennsylvania as well as the Honorable Louis R. Meloni of the New Jersey Superior Court, Civil Division, Camden County. Ms. Cell's practice is dedicated solely to labor and employment law matters.

7.     In addition to this case, we filed a related FLSA collective action case for employees of Defendants' Extended Range Multi-Purpose Program ("ERMP") [that case was *Trembly, et al. v. AAI Services Corp., et al.*, Case No. 1:13-cv-01393-ELH (the "Trembly Case")]. For this case and the Trembly Case (together referred to as the "ERMP Cases"), we

2

were required to retain a Maryland law firm to assist as local counsel. For all intents and purposes, the ERMP Cases were essentially litigated and settled together. In addition to managing this federal court case and the multiple Plaintiffs who live and work in various states throughout the United States, I managed the Trembly Case and the local counsel in both of the ERMP Cases.

8. Local counsel for the Rubin Fortunato firm in this case is Jeffrey R. Bloom, Esq. Mr. Bloom is Counsel at the Rosenthal Gormly firm in Rockville, MD. He bills at an hourly rate of $275.00 for this case. To date, Mr. Bloom has logged over eight hours on this case and will log more through the final hearing and consummation of the settlement process.

9. As lead counsel for this case, the Rubin Fortunato firm has logged close to 250 hours itself to date and additional work will be required up to and including final completion of this case. I have billed at an hourly rate of $400.00, Mr. Fortunato at an hourly rate of $485.00, and Ms. Cell at an hourly rate of $170.00. Just for the Rubin Fortunato firm, the hourly billings at an average hourly rate of $300.00 to date exceed $75,000.00.

10. The time records and billing sheets for the two law firms representing the Plaintiffs consist of almost one hundred pages.

11. All counsel for the Plaintiffs devoted significant amounts of time and resources for the duration of this case which involved very unique facts and complicated legal issues under the FLSA and applicable state wage and hour laws. We represent 47 eligible Plaintiffs located throughout the United States. We investigated the initial claims and developed the case; filed a Collective Action Complaint; filed a Motion for Leave to Amend the Complaint (to pursue additional state law claims under Federal Rule of Civil Procedure 23; participated in targeted discovery for settlement purposes; and participated in a full-day settlement conference with the

3

United States Magistrate Judge during which the parties agreed to settle both of the ERMP Cases. Significant time was then expended preparing the settlement documentation and paperwork for notifying the class members of their eligibility to participate in the settlement and monitoring the settlement opt-in claims process. To date, 33 (70.21%) of the class members eligible to participate in the settlement of this case have opted-in to the settlement procured by the undersigned.[1]

12.     It is submitted that the attorney's fees sought to be approved by Plaintiffs' counsel are fair and reasonable. The 33.3% of the settlement amount represents the agreed-upon contingency fee set forth in the Plaintiffs' Contingency Fee Agreements and, further, is proportionate to the amount of settlement funds to be paid to the Plaintiff class members who have participated in the settlement.

I SOLEMNLY AFFIRM under the penalties of perjury that the contents of this Affidavit are true and correct to the best of my knowledge, information, and belief.

Date:   12 | 6 | 13

PETER R. ROSENZWEIG

---

[1]      In the related Trembly Case, there are 67 eligible members of the Plaintiff class. In the Trembly Case, 32 members of that class opted to participate in the settlement of that case. Thus, for both of the ERMP Cases, out of a total of 114 eligible Plaintiffs, 65 (57%) opted to participate in the settlements.

## **CERTIFICATE OF SERVICE**

I, Peter R. Rosenzweig, Esq., counsel for Plaintiffs, hereby certify that a true and correct copy of the foregoing *Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs* was served on this 6th day of December, 2013, via ECF on counsel for Defendants at the address listed below:

Jason C. Schwartz, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Peter R. Rosenzweig, Esq.